IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TERRIKA R. JOHNSON, | CASE NO. 3:20-CV-01759-JGC |
| Plaintiff, | JUDGE JAMES G. CARR |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION |
| Defendant. | |

INTRODUCTION

Plaintiff Terrika R. Johnson, proceeding *pro se*, filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying supplemental security income ("SSI"). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On August 18, 2020, pursuant to Local Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a report and recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Ms. Johnson filed for SSI on January 22, 2018, alleging a disability onset date of January 10, 2018. (Tr. 15). Her claim was denied initially and on reconsideration. (Tr. 57-66, 68-78). She

1

then requested a hearing before an administrative law judge. (Tr. 91). Ms. Johnson (represented by counsel at the hearing), and a vocational expert ("VE") testified before the ALJ on May 17, 2019. (Tr. 29-56).

On August 21, 2019, the ALJ found Ms. Johnson not disabled in a written decision. (Tr. 12-28). The Appeals Council denied Ms. Johnson's request for review, making the hearing decision the final decision of the Commissioner. (Tr.1-6; *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, and 416.1481). Ms. Johnson timely filed this action on August 10, 2020. (ECF #1).

## FACTUAL BACKGROUND

I. ADMINISTRATIVE HEARING

The following summarizes the testimony of Ms. Johnson and VE Charles H. McBee, presented during the hearing before the ALJ.

Ms. Johnson testified about her acute coronary syndrome. Since undergoing bypass graft surgery in January 2018, Ms. Johnson experiences chest pains a few times a month, for which she takes Tylenol 3. (Tr. 38, 42). She does not take nitroglycerin. (Tr. 39). Ms. Johnson also gets swelling in her legs a few times a week, depending on her diet and activity. (*Id.*). Walking and sitting for extended periods of time cause her legs to swell. (*Id.*). Ms. Johnson wears compression stockings and elevates her legs above heart level for several hours to relieve the swelling. (*Id.*). Ms. Johnson testified that her medications cause hair thinning, dizziness, and frequent urination. (Tr. 41). The dizziness occurs a few times a week and she must sit or lie down for a half hour. (Tr. 50).

Ms. Johnson tries to walk about a quarter- to half-mile a day, which takes her about twenty to thirty minutes. (Tr. 43). Ms. Johnson does not believe she could work in a sitting position because she has cardiovascular disease and heart issues and is, therefore, more prone to blood

clotting. (Tr. 45). She has more bad days than good and does not believe she could work full time in a packaging position because of her leg swelling and many doctor's appointments. (Tr. 47-49). Ms. Johnson testified her energy level is low and doing light housework is draining. (Tr. 49).

The VE then testified. The ALJ proposed the following hypothetical individual and asked if such an individual could perform Ms. Johnson's past relevant work as an State Tested Nursing Assistant or a Licensed Practical Nurse: an individual of Ms. Johnson's age, education, and vocational background who has the ability to work at the light exertional level, except the individual can frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, and crouch; and must avoid exposure to hazards such as dangerous machinery and unprotected heights. (Tr. 52-53). The VE testified such an individual could not perform Ms. Johnson's past relevant work but could perform other jobs in the national economy, including a merchandise marker, an inspector/hand packer, and an office helper. (Tr. 53).

The ALJ proposed another hypothetical with the same restrictions but with the ability to perform at the sedentary exertional level. (Tr. 53). The VE identified jobs such an individual could perform, including an information clerk, a document preparer, and an address clerk. (Tr. 53-54). The same positions exist for an individual subject to the previously identified restrictions who is capable of understanding and carrying out simple tasks, but not at rate pace, and is limited to a repetitive work routine with few unexpected changes. (Tr. 54). No jobs exist in the national economy that would allow an individual the ability to elevate their legs above heart level for thirty minutes three times a day throughout the workday because "elevation to that level is generally not accommodated, nor permissible, in competitive employment." (Tr. 54-55).

3

## II. PERSONAL AND VOCATIONAL EVIDENCE

Ms. Johnson was 43 years old at the time of her alleged onset date, and 44 years old at the time of the administrative hearing. (Tr. 57). Ms. Johnson completed two years of college and became an LPN. (Tr. 35). In the past, Ms. Johnson has been employed as a STNA and an LPN. (Tr. 21).

## III. RELEVANT MEDICAL EVIDENCE

On January 10, 2018, Ms. Johnson went to the Emergency Room with complaints of a burning sensation on the left side of her chest, cough, nasal congestion, sweating, and shortness of breath. (Tr. 478, 486). She was discharged the next day in stable condition. (Tr. 500). When her symptoms reoccurred several days later, Ms. Johnson went to the ER where a cardiac workup revealed a high-grade left anterior descending lesion. (Tr. 258). The following day, Ms. Johnson underwent a coronary bypass grafting x2. (*Id.*). She was discharged on January 19, 2018. (*Id.*).

At a follow-up appointment on January 31, 2018, Ms. Johnson denied chest pain and shortness of breath. (Tr. 251). Physical examination showed mild edema, strong and equal pulses bilaterally, clear lungs, and normal heart sounds. (Tr. 253). Ms. Johnson's surgeon noted her slow, steady progress, encouraged her to increase activity as tolerated, and discharged her from his care. (Tr. 251, 253).

On April 4, 2018, Ms. Johnson returned to the ER after several days of left ear pain and coughing accompanied by chest pain. (Tr. 426). Her chest pain was determined to be musculoskeletal in nature because her EKG was normal. (*Id.*). Ms. Johnson received ear drops and antibiotics. (*Id.*).

4

Ms. Johnson returned to the ER at the end of April with chest discomfort during cardiac rehabilitation exercises. (Tr. 439). She also noted a bulge under her sternum, determined to be an incisional hernia. (Tr. 439, 464). EKG and chest x-rays were normal. (Tr. 468-69). She was discharged. (Tr. 464). She underwent hernia repair surgery without complication on May 24, 2018. (Tr. 569, 591, 686-718). In June, Ms. Johnson followed up with the surgeon who repaired the hernia. (Tr. 569). Ms. Johnson reported some bloating and distension initially, but those issues had resolved. (*Id.*). Ms. Johnson did not exhibit edema on examination. (*Id.*).

In August 2018, Ms. Johnson went to the ER and reported left sided chest pain with inhalation, gas, and abdominal bloating. (Tr. 579). Examination and chest x-ray were normal, and Ms. Johnson was discharged after relief with Pepcid and a gastrointestinal cocktail. (Tr. 580-84).

At Ms. Johnson's follow-up appointment with her cardiologist, physical examination revealed her chest was clear, she had a regular heart rate without murmurs, and she did not have edema. (Tr. 578). The doctor noted Ms. Johnson was "doing great," had her blood pressure under control, and did not have further atypical chest pains. (Tr. 579).

In November 2018, Ms. Johnson went to the ER with high blood pressure and an off-and-on burning sensation in her medial calf. (Tr. 733). She denied chest pain, shortness of breath, nausea, vomiting, headache, and diarrhea. (*Id.*). Ms. Johnson reported switching blood pressure medications that morning. (*Id.*). Physical examination and chest x-rays were unremarkable. (Tr. 735-36). After receiving Levonox and counseling on proper medication management, Mr. Johnson was discharged. (*Id.*).

Ms. Johnson returned to her cardiologist's office in January 2019 to re-evaluate her blood pressure. (Tr. 657-63). At her last visit, the doctor increased her blood pressure medication. (Tr.

658). Ms. Johnson's blood pressure numbers had improved but remained suboptimal. (Tr. 659). Ms. Johnson reported being on multiple medications for a resistant sinus infection and believed this had caused her high numbers. (*Id.*). She denied chest pain, shortness of breath, dizziness, syncope, near syncope, or palpations. (*Id.*). Physical examination showed regular heart rate and sounds and no edema. (Tr. 661). The nurse practitioner agreed to wait for Ms. Johnson to complete treatment for her infection before changing her medications. (Tr. 659).

On April 10, 2019, Ms. Johnson returned to her cardiologist for a follow-up appointment and complained of shortness of breath. (Tr. 774). Physical examination was normal. (Tr. 777). The doctor noted Ms. Johnson was doing great, was asymptomatic, had excellent blood pressure, and completed cardiac rehab. (Tr. 774, 778).

## IV.  MEDICAL OPINIONS

None of Ms. Johnson's treating providers supplied a medical source opinion.

State agency medical consultants reviewed Ms. Johnson's medical records at the initial and reconsideration levels. (Tr. 57-66, 68-78). Both consultants determined Ms. Johnson could perform work at a light exertional level. (Tr. 63-66, 74-78). At the initial level, the consultant limited Ms. Johnson to frequently climbing ramps, stairs, ladders, ropes, and scaffolds; and frequently stoop, kneel, crouch, and crawl. (Tr. 63-64). At the reconsideration level, the consultant determined Ms. Johnson can never climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs; and can occasionally stoop, crouch, and crawl. (Tr. 74-75).

## THE ALJ'S DECISION

The ALJ's decision, dated August 21, 2019, included the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 22, 2018, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: congestive heart failure; ischemic heart disease; coronary artery disease; status post coronary bypass graft surgery; hypertension; tobacco abuse; and obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: frequently climb ramps/stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, crouch, and crawl; no exposure to hazards such as dangerous machinery and unprotected heights.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on January 6, 1975 and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English. (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 22, 2018, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-23).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of

8

evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security,* 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

     5.     Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Because Ms. Johnson is proceeding *pro se*, this Court liberally construes her pleadings and arguments. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) ("The appropriate liberal construction [of *pro se* pleadings] requires active interpretation in some cases . . . ."). "Although liberal construction requires active interpretation of the filings of a *pro se* litigant . . . it has limits." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). Liberal construction does not require this Court to conjure allegations on a plaintiff's behalf. *Id.* And, "*pro se* parties must still brief the issues advanced 'with some effort at developed argumentation.'" *Snyder v. United States*, 23 F. App'x. 212, 213 (6th Cir. 2001).

Ms. Johnson alleges the ALJ did not properly consider the evidence before her. (Pl.'s Br., ECF #13, PageID 966). She does not offer arguments in support of this contention. Ms. Johnson

attached several printouts from MyChart,[1] including a list of medications, a brain MRI revealing no evidence of acute intracranial pathology, a Plan of Care showing test orders and results post-dating the issuance of the ALJ's written decision, the names of medical providers, and a list of Ms. Johnson's diagnoses. (Pl.'s Br., ECF #13, Attachments 1-14). She does not argue for remand under Sentence Six to consider new and material evidence, but rather, asks the Court to consider them in making its findings.

The Commissioner argues Ms. Johnson did not satisfy her burden to provide relevant medical and other evidence proving her alleged disability and the ALJ's residual functional capacity (RFC) assessment is supported by substantial evidence. (Comm'r's Br., ECF #15, PageID 1031-32). The Commissioner also notes Ms. Johnson attached additional medical records to her merits brief that were not before the ALJ and argues the Court may not consider them in its review for substantial evidence. (*Id.* at PageID 1032). Additionally, the Commissioner claims Ms. Johnson has not made a supportable claim for remand under Sentence Six and has waived any such argument.[2] For the reasons that follow, I conclude the ALJ properly analyzed the evidence of record and her written decision is supported by substantial evidence.

---

[1] MyChart is a service provided by ProMedica that tracks a patient's healthcare information and gives patients online access to, *inter alia,* their health records and test results. *See* https://www.promedica.org/mychart/ (last accessed Nov. 29, 2021).

[2] Ms. Johnson attached additional medical records and other evidence to her brief and requested the Court to consider them. The Sixth Circuit repeatedly holds that evidence submitted after issuance of the ALJ's written decision cannot be considered part of the record for purposes of substantial evidence review. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001); *see also Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996). As such, I did not consider the attached records in my substantial evidence review. Ms. Johnson did not argue for remand for the consideration of new and material evidence and has waived any such argument. *See Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 491 (6th Cir. 2006) ("we limit our consideration to the particular points that [Plaintiff] appears to raise in her brief on appeal.").

As the Commissioner points out, the ALJ considered all the available medical and other evidence before her. At Steps One and Two, the ALJ determined Ms. Johnson had not engaged in substantial gainful activity and listed her severe impairments. (Tr. 17). At Step Three, the ALJ concluded Ms. Johnson's impairments did not meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, including Listing 4.00. (Tr. 17). The ALJ then evaluated Ms. Johnson's hearing testimony, the relevant medical records, and the medical consultant's opinions in crafting an RFC that limited Ms. Johnson to the light exertional level with other restrictions. (Tr. 18-21).

The ALJ appropriately determined Ms. Johnson's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence. The ALJ noted that although Ms. Johnson claimed her legs swelled several times per week and she needed to elevate them above heart level, the record did not show she complained about this problem to her medical providers. (Tr. 20). Moreover, the ALJ considered Ms. Johnson's testimony that she could not perform a sedentary job because she is prone to blood clots and her claim that the ER treats her with Coumadin and injections when tests reveal blood clots somewhere in her body and compared these statements to the numerous ER encounters in the record that did not support Ms. Johnson's testimony. (Tr. 21).

As to the medical opinions, the ALJ evaluated the state agency medical consultant's opinions and found the more restrictive opinion at the reconsideration level more persuasive and consistent with the evidence of record. (*Id.*).

After considering all relevant evidence, the ALJ crafted an RFC that reflected the restrictions determined by the consultant on reconsideration and, in consideration of Ms.

12

Johnson's cardiac history, also restricted her from exposure to hazards such as dangerous machinery and unprotected heights. (*Id.*).

All the ALJ's determinations are supported by substantial evidence in the record. Ms. Johnson has not met her burden to establish proof of her disability and has not identified an error by the ALJ requiring remand.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying SSI.

Dated: November 30, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.** *See United States v. Walters,* **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn,* **474 U.S. 140 (1985).**